UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| UNITED STATES, | : | CASE NO. 1:20-cr-00561 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 337] |
| v. | : | |
| | : | |
| JASON JARVIS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this drug case, Defendant Jason Jarvis moves to suppress evidence recovered when police searched his person after a traffic stop.[1] Defendant argues that the traffic stop was pretextual and the police officer lacked probable cause for the search. Defendant also argues the search lacked reasonable suspicion. The Government opposed.[2]

On October 7, 2021, the Court **GRANTED** Defendant's motion to suppress during the motion hearing.[3] This opinion provides the Court's reasoning for granting the motion.

I.     Background

Around midnight on February 18, 2020, Mansfield Police Officer Lieutenant Carroll initiated a traffic stop of an automobile that was missing a rear-view mirror.[4] Defendant Jarvis was driving the vehicle.[5]

---

[1] Doc. 337.
[2] Doc. 344.
[3] Transcript of Motion to Suppress Proceeding as to Jason Jarvis, United States v. Jarvis, No. 1:20-cr-00561 (N.D. Ohio, Oct. 7, 2021).
[4] Doc. 344-1 at 8.
[5] *Id.*

Case No. 1:20-cr-00561
GWIN, J.

When Lt. Carroll approached the vehicle, he inquired about the vehicle and insurance information.[6] Lt. Carroll asked if Defendant Jarvis had a valid driver's license and Jarvis stated that he was licensed but did not have the license with him.[7] Jarvis provided his social security number.[8] Defendant also attempted to provide Lt. Carroll with an insurance form on his phone.[9]

Lt. Carroll then asked Defendant Jarvis to exit the vehicle.[10] He advised Defendant that he would conduct a pat-down for officer safety.[11] An exchange ensued during which Lt. Carroll twice asked whether he could place his hands in Defendant Jarvis's pockets.[12] Lt. Caroll claims he asked Defendant "if he minded" if Lt. Carroll placed his hands in Defendant's pockets.[13] Defendant Jarvis claims Lt. Carroll asked if he could place his hands in Defendant's pockets.[14] Defendant replied "no" both times.[15] Lt. Carroll then reached inside Defendant Jarvis's left pocket and recovered a plastic bag containing suspected methamphetamine.[16]

## II. Discussion

### A. The Traffic Stop Was Supported by Probable Cause.

Fourth Amendment protections extend to the temporary detention of persons during a police traffic stop.[17] Such temporary detention must be reasonable.[18] The decision to stop

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Doc. 344-1 at 8.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *See* Doc. 337 at 3–4.
[15] Doc. 337 at 3–4; Doc. 344-1 at 8.
[16] Doc. 344-1 at 8.
[17] Whren v. United States, 517 U.S. 806, 809–10 (1996).
[18] *Id.* at 810.

Case No. 1:20-cr-00561
GWIN, J.

an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.[19]

Defendant Jarvis was driving a vehicle without a rear-view mirror. Ohio Revised Code Section 4513.23 makes it a misdemeanor offense to operate a motor vehicle that is not equipped with a rear-view mirror.[20] After Lt. Carroll observed the missing rear-view mirror there was probable cause to stop the automobile.

### B. Removing Defendant Jarvis From the Vehicle Was Lawful.

During a lawful traffic stop, an officer is permitted to remove an occupant from the vehicle pending the completion of the stop without an additional level of suspicion that the occupant poses a safety risk.[21]

Therefore, Defendant Jarvis was lawfully removed from the vehicle.

### C. The Search of Defendant Jarvis Exceeded the Scope of Permissibility.

Upon ordering Defendant Jarvis to exit the vehicle, Lt. Carroll informed Defendant that Lt. Carroll would pat him down for "officer safety."[22] Protective searches must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby."[23] If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid and its fruits will be suppressed.[24] If, however, an officer lawfully pats down a suspect's outer clothing and

---

[19] *Id.*
[20] Ohio Rev. Code § 4513.23.
[21] *Maryland v. Wilson*, 519 U.S. 408, 415 (1997).
[22] Doc. 344-1 at 8.
[23] *Terry v. Ohio*, 392 U.S. 1, 26 (1968).
[24] *Sibron v. New York*, 392 U.S. 40, 65–66 (1968).

- 3 -

Case No. 1:20-cr-00561
GWIN, J.

feels a contraband object whose "contour or mass makes its identity immediately apparent," seizure of that object would be justified.[25]

Lt. Carroll's continued exploration of Defendant Jarvis's pocket—including reaching inside the pocket after the pat down showed that the pocket did not contain a weapon—was unrelated to the officer safety justification for the search.[26] Lt. Carroll did not report or testify to feeling any object resembling a weapon.

Further, the incriminating character of the object was not immediately apparent to Lt. Carroll. The quantity and form of the drugs were not so self-identifying that Lt. Carroll would have known there was a baggie containing drugs until he reached inside the pocket.[27] Lt. Carroll reported originally thinking he felt marijuana, but it was unclear from his testimony whether he thought that from plain feel or only after he had reached inside the pocket.[28]

Lt. Carroll's search inside of Defendant Jarvis's pocket exceeded any officer safety justification for the original pat-down and was not justified by the "plain feel" exception.

### D. Defendant Jarvis Did Not Consent to Search.

The government bears the burden, by a preponderance of the evidence, to show through "clear and positive testimony" that Defendant Jarvis validly and voluntarily consented to the search.[29] Not any type of consent will suffice; instead, only consent that is

---

[25] *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993).
[26] *Id.* at 378.
[27] Transcript of Motion to Suppress Proceeding as to Jason Jarvis, United States v. Jarvis, No. 1:20-cr-00561 (N.D. Ohio, Oct. 7, 2021).
[28] *Id.*; Doc. 344-1 at 8.
[29] *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999) (internal citations omitted).

Case No. 1:20-cr-00561
GWIN, J.

"unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion" is satisfactory.[30] Here, no such consent was given.

Defendant Jarvis claims Lt. Carroll asked if he could search Defendant.[31] Lt. Carroll claims he asked Defendant Jarvis if he "minded" if Lt. Carroll searched him.[32] Both Defendant Jarvis and Lt. Carroll claim Defendant responded "no".[33] This confusion and discrepancy means any response Defendant Jarvis gave does not constitute unequivocal and specific consent to be searched.[34]

Further, Defendant Jarvis became "loud" and "agitated" as Lt. Carroll reached into his pocket.[35] This protestation confirms that Defendant's response of "no" did not constitute consent to search.[36]

### III. Conclusion

For the foregoing reasons, the Court **GRANTED** Defendant Jarvis's motion to suppress.

IT IS SO ORDERED.

Dated: October 18, 2021            *s/ James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE

---

[30] *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir.1992) (internal citation omitted).
[31] Doc. 337 at 3–4.
[32] Doc. 344 at 6.
[33] Doc. 337 at 3–4; Doc. 344-1 at 8.
[34] *United States v. Tomlinson*, 190 F. Supp. 3d 834, 841 (S.D. Ind. 2016) (finding a defendant's response to the officer's question, "Mind if I take a look?" to be ambiguous because a reasonable person could have understood the defendant to be communicating his consent or opposition to the search).
[35] Doc. 344-1 at 8.
[36] *See Gale v. O'Donohue*, No. 17-12172, 2019 WL 1897130, at *9 (E.D. Mich. Apr. 29, 2019) (finding that if defendant did not intend to consent, the officer's commencement of the search was the time to make that clear), *aff'd*, 824 F. App'x 304 (6th Cir. 2020).