UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:20-cr-00561-2 |
| Plaintiff, | : | OPINION & ORDER |
|  | : | [Resolving Doc. 588] |
| v. | : |  |
| JASON JARVIS, | : |  |
| Defendant. | : |  |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Defendant Jason Jarvis is currently serving a sentence for conspiracy to possess and distribute methamphetamine.[1]  Defendant Jarvis moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  With the motion, Jarvis argues that his medical conditions justify a sentence reduction.[2]

The Court appointed counsel to assist Jarvis with his motion.[3]  Appointed counsel filed a supplement and reply on Jarvis's behalf.[4]  The government filed an opposition.[5]

Defendant Jarvis has not shown that his medical conditions are extraordinary and compelling reasons for a sentence reduction.  And the 18 U.S.C. § 3553(a) factors do not favor early release either.  So, the Court **DENIES** the compassionate release motion.

## I. BACKGROUND

On September 24, 2020, a grand jury indicted Defendant Jarvis on methamphetamine-related charges.[6]  Jarvis obtained methamphetamine from California and

---

[1] Doc. 517; Doc. 514 at PageID #: 2902.
[2] Doc. 588.
[3] CJA 20 Appointment (Apr. 5, 2023).
[4] Docs. 608-2, 622-2.
[5] Doc. 618.
[6] Doc. 514 at ¶¶ 1–2.

Case No. 1:20-cr-00561-2
GWIN, J.

then passed that methamphetamine to his co-defendants for further distribution in Ohio.[7] In total, Jarvis possessed at least 545 grams of methamphetamine throughout this drug conspiracy.[8]

On October 14, 2021, Defendant Jarvis pled guilty to conspiracy to possess and distribute methamphetamine.[9] The Court sentenced Jarvis to 120 months.[10]

## II. DISCUSSION

Under § 3582(c)(1)(A), a district court may reduce a defendant's sentence if the defendant shows: (1) there are "extraordinary and compelling" reasons for a sentence reduction; (2) a sentence reduction is consistent with the Sentencing Commission's applicable policy statements; and (3) the 18 U.S.C. § 3553(a) factors support a reduction.[11]

### A. Extraordinary and Compelling Reasons

U.S. Sentencing Guidelines § 1B1.13 is the applicable policy statement guiding compassionate release. This policy statement identifies circumstances that qualify as extraordinary and compelling.[12]

As relevant here, Defendant Jarvis argues that he demonstrates extraordinary and compelling reasons under two of the policy statement's medical circumstance provisions.

First, Jarvis says that he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care."[13] Jarvis says that he suffers

---

[7] Doc. 514 at ¶¶ 6–7.
[8] *Id.* at ¶ 45.
[9] Minutes of Change of Plea (Oct. 14, 2021).
[10] Doc. 517.
[11] *United States v. Ruffin*, 978 F.3d 1000, 1004–05 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).
[12] U.S.S.G. § 1B1.13(b).
[13] U.S.S.G. § 1B1.13(b)(1)(B)(i).

- 2 -

Case No. 1:20-cr-00561-2
GWIN, J.

from heart disease and that he cannot "administer self-care to address his heart condition" while incarcerated.[14]

But being able to treat one's own medical conditions is different from providing self-care. Usually, individuals will not be able to treat their own medical conditions. Those individuals will need to seek a doctor who can diagnose them and then provide medication or perform other medical procedures. If being unable to self-treat a medical condition were extraordinary and compelling, then most illnesses more severe than a cold would be extraordinary and compelling. That runs counter to what "extraordinary and compelling" means.

Self-care refers to something more basic—the ability to independently carry out standard daily living tasks such as dressing, eating, or taking prescribed medication.[15]

Although Defendant Jarvis's heart disease may limit the activity types he can perform or the food he can eat, nothing in the record suggests that Jarvis cannot independently perform daily living tasks. So, Jarvis has not shown a diminished ability to provide self-care.

Second, Jarvis says that even if he does not qualify under the policy statement's self-care provision, Jarvis still qualifies for a sentence reduction because his heart conditions "require[] long-term or specialized medical care that is not being provided and without which [Jarvis] is at risk of serious deterioration in health or death."[16]

---

[14] Doc. 608-2 at 14.
[15] *See United States v. Moore*, No. 3:17-CR-86-KAC-DCP-3, 2023 WL 5029892, at *2 (E.D. Tenn. Aug. 7, 2023) (holding that an inmate who was "functionally independent" could provide self-care); *United States v. Simpson*, No. CR 6:04-063-DCR, 2024 WL 871320, at *3 (E.D. Ky. Feb. 29, 2024) (medical conditions that "impact [] conditions of daily living" but do not prevent an inmate from "independently providing self-care" are not extraordinary and compelling).
[16] U.S.S.G. § 1B1.13(b)(1)(C).

Case No. 1:20-cr-00561-2
GWIN, J.

Jarvis primarily argues that he received poor medical care while incarcerated at FCI Gilmer.[17] However, Jarvis is no longer at FCI Gilmer. On December 5, 2023, The Bureau of Prisons transferred Jarvis to FCI Thomson.[18]

Jarvis says that his medical treatment at FCI Thomson was also spotty. But Jarvis points to only two alleged lapses, and neither rises to the extraordinary and compelling level.

For the first lapse, Jarvis says that FCI Gilmer officials promised to schedule him a November 2023 cardiologist appointment.[19] Yet, Jarvis did not see a cardiologist before transferring to FCI Thomson, and FCI Thomson apparently has no record of such an appointment.[20]

The Bureau of Prisons appears to be at fault for losing track of Jarvis's appointment during the transfer from FCI Gilmer to FCI Thomson. But while it is disappointing for the Bureau to make this mistake, a one-time delay in scheduling a cardiologist appointment after a transfer is not extraordinary and compelling. FCI Thomson still can (and should) schedule a cardiologist appointment for Jarvis to provide care.

For the second lapse, Jarvis says that he went without some of his heart medication for five days because FCI Thomson staff was slow to fill Jarvis's prescription.[21] Again, while this situation is unfortunate, one medication delay incident is not extraordinary and compelling.

---

[17] Doc. 608-2 at 8–12.
[18] *Id.* at 12.
[19] Doc. 608-8 at PageID #: 3937.
[20] *Id.*
[21] *Id.* at PageID #: 3938–39.

- 4 -

Case No. 1:20-cr-00561-2
GWIN, J.

More broadly, Jarvis appears to suggest that no prison at all could provide adequate care for his heart disease because prisons are not equipped to perform procedures such as placing a stent.[22]

However, there is no medical record evidence showing that Jarvis needs surgical procedures to treat his heart disease. In December 2022, an outside cardiologist examined Jarvis and recommended managing Jarvis's heart disease with medication.[23] And in December 2023, FCI Thomson medical staff evaluating Jarvis reported that Jarvis's heart disease was "well-controlled on current meds."[24]

Medication management is available at FCI Thomson, so Defendant Jarvis can receive his necessary care.

The Court notes that even if Jarvis needed a stent or other surgical procedure, compassionate release still would not be appropriate. Even if a prison does not have facilities to perform surgeries onsite, the Bureau of Prisons can transfer an inmate to outside hospitals for procedures.

Therefore, Defendant Jarvis has not shown extraordinary and compelling reasons for compassionate release.

### B. Sentencing Factors

The § 3553(a) sentencing factors also do not support compassionate release. Jarvis trafficked at least 545 grams of methamphetamine—a significant amount.[25] The Court judged

---

[22] Doc. 622-2 at 2.
[23] Doc. 609-2 at PageID #: 3979–80.
[24] Doc. 619 at PageID #: 4050.
[25] Doc. 514 at ¶ 45.

Case No. 1:20-cr-00561-2
GWIN, J.

that a 120-month sentence was necessary to reflect this offense's seriousness, deter future crime, and to avoid sentencing disparities.[26]

The government took Defendant Jarvis into custody on September 28, 2020.[27] Accounting for time served prior to Jarvis's sentencing, Jarvis has served less than four years of his sentence. To release Jarvis before he has served even half of his sentence would not reflect the magnitude of Jarvis's methamphetamine trafficking and would give Jarvis a significantly lower sentence than similar defendants would receive.

So, the § 3553(a) factors do not weigh in favor of compassionate release either.

### III.   CONCLUSION

For the reasons above, the Court **DENIES** the compassionate release motion.

IT IS SO ORDERED.

Dated: June 18, 2024                             *s/    James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE

---

[26] Doc. 518 at PageID #: 2940.
[27] Doc. 514 at PageID #: 2902.